## UNCLE SAM'S LOAN OFFICE v. MRS. R. A. EMERY.

### Decided February 13, 1908.

**1.—Pawnbroker—Sale by—Failure to Comply with Statutory Regulations.**

A sale of pawned articles by a licensed pawnbroker is not rendered invalid by a failure on the part of the pawnbroker to comply with the requirements of article 3645 of the Revised Statutes concerning the making and filing with the county clerk of a report of such sale. The purpose of said statute was to give publicity to such sales for police surveillance.

**2.—Pawnbroker—Trustee for Pledgor—Purchase at His Own Sale.**

A pawnbroker, in selling pawned articles, becomes a trustee for the owner. The sale by him must be conducted fairly and in good faith, and in such a way as to subserve not only his own rights, but also the highest interests of the pledgor. Being a trustee, he cannot become a purchaser of the pledged property at his own sale, without the consent of the pledgor. Such a purchase is prima facie voidable, and the burden is on the pawnbroker to show that the sale was made according to law and under circumstances of the utmost fair dealing and good faith.

**3.—Same—Case Stated.**

In a suit by the owner of pawned articles against a pawnbrokerage company for the value of certain articles pawned with it and sold and bought in by the company, it appeared that at the sale the jeweler of the company acted as auctioneer; that the defendant's general manager, who was a stockholder in the company, conducted the sale and bid in the property at the amount of the loan, which he knew to be about one-half of its value and no other bidders were present at the sale. Held, that the sale was invalid, and the plaintiff entitled to recover.

Appeal from the County Court of Jefferson County. Tried below before Hon. Jas. A. Harrison.

*Duff, John & Davis* and *H. P. Barry,* for appellant.

*Teagle & Conley,* for appellee.

LEVY, ASSOCIATE JUSTICE.—By her petition Mrs. R. A. Emery claims that she had pawned a pair of diamond earrings and some other articles of jewelry, to secure a loan of $88, with the understanding that the goods pawned were to be held until she could redeem same; and that no interest was to be charged on the money; and that appellant has converted the property to its own use and benefit. She prayed judgment for the possession of the property, and, in the alternative, for the market value thereof.

By the answer it was claimed that the property was pawned by a contract of pawn providing that if the said sum of $88 was not paid at the end of thirty days from the date of the pawn, the property would be forfeited to the pledgees. That the appellee defaulted in the payment of said sum and failed to pay any interest on the same. That the property pledged was not sold by the pledgees at the expiration of the thirty days, but was held for a period of nearly two years; and the pledge, during that time, not being redeemed, was advertised for sale for the required period of advertisement; and on February 16, 1905, the property was sold at public sale to the highest bidder.

By her supplemental petition the appellee denied the terms of the contract as set forth in the answer, and asserted that if the same were true the contract was usurious; and, further, that the sale of the pledge was void because a report of the sale had not been filed with the county clerk, as required by the statute.

The case was tried before the court without a jury, and a judgment was rendered in favor of the appellee against appellant for the value of the articles pawned, after deducting the amount of the loan without interest; and from this judgment the appellant has appealed.

Appellant assigns error as to several of the findings by the court. A complaint is that the finding that the loan was made and the pledge deposited "with the understanding that the loan was from month to month, and that it provided for ten percent interest per month" was contrary to the evidence. We do not think the evidence shows that there was an agreement to hold the goods "from month to month;" but, on the contrary, the money was to be paid in thirty days from the date of the pawn. We are of the opinion that there is no evidence to support the further portion of the finding that there was an agreement of "ten percent interest per month" between the parties for the loan. There was no rate of interest agreed upon. We think the findings, except in the particular mentioned, are warranted by the evidence.

The material findings, in substance, with the correction above, are: That prior to October 16, 1903, I. Block and J. F. Horkan were licensed pawnbrokers under the statutes of Texas regulating

pawnbrokers, and that on that date the appellee secured from them a loan of $88, pledging the personal property in suit. The loan was made with the agreement that it was to be paid in thirty days from the date of the pawn, with no rate of interest agreed upon, and providing the right to sell the property on the expiration of the thirty days if the money and interest were not paid. The appellee in the meantime left the State, and has continued to remain away. Appellee defaulted in the payment of the principal and any interest at the date fixed. The pledgees did not sell the property at the date fixed, but continued to hold same without effort at sale. No further or other agreement or arrangement was had or made between the parties respecting the pledge or the money due. In November, 1904, Block, Horkan and others associated themselves into a corporation and incorporated "Uncle Sam's Loan Office," and Block & Horkan then sold and assigned all their pawnbrokerage business to the said corporation; and the said corporation took charge of all their pledges, including the appellee's, under the same terms and conditions as they were held by Block & Horkan. The corporation conducted a pawnbrokerage business as licensed pawnbrokers under the laws of this State. The pledge not being redeemed, or any interest paid, the appellant advertised the same for sale by putting the required five days notice at required public places, and filed a copy of the notice of sale with the county clerk, and on the advertised date of February 26, 1905, sold a part of the property (the two earrings) at public auction, the fingerring and other items not being sold; the only persons at the sale being appellant's general manager and its jeweler, who acted as auctioneer. The appellant, through its general manager, bought in the property so sold, the bid being the amount of the debt exclusive of interest. No report of the sale was ever made and filed with the county clerk or in his office. The market value of the earrings at the time of the sale was $225, and the fingerring and the other items $14. Appellee, acting through her attorney, in the year 1906 and after the sale, demanded the return of the property and offered to pay the amount of the loan with six percent interest; but the appellant did not return, or offer to return, the property, except on payment of $200, but did offer to return the property on payment of the $200. Appellant refused to inform the appellee's attorney as to who held the earrings, but agreed to get them on payment of the $200.

The trial court made the conclusions of law, in substance (1), that the contract was usurious and no interest was collectible under it; and (2) that because no report of the sale was filed with the county clerk, the sale was not in compliance with law, and void; and (3) appellant, being the pledgee, could not purchase at his own sale, because not authorized so to do by the contract of pledge nor by statutes nor common law, and the sale was not fairly made and void; and (4) in making the sale unfairly and in violation of the statute regulating the sale by pawnbrokers, and in refusing to deliver the property on tender of the debt and legal interest, the appellant was guilty of conversion of the goods.

Appellant insists that the court erred in the conclusions of law

reached by him, and contends, in effect, first, that if the pledgee sold the pledge at public auction to the highest bidder, for cash, under the provisions of the statute authorizing the sale of unredeemed pawns —that is, by giving and posting the five days notice at the time and place of sale by printed advertisements setting forth the time and place of sale, a full description of the property, and the name of the party pledging the same, and filing a copy of the notice of sale with the county clerk where the sale took place—then such sale vested the title of said pledge without filing a report of such sale with the county clerk, and, in the absence of fraud, an action for conversion will not lie against the pledgee; second, that because the pledgee purchased the goods at his own sale in pursuance of a statutory right to sell unredeemed property upon default of the pledgor to redeem within a certain time, this did not vitiate the sale if the sale was fairly made; and third, as the sale was fairly made, judgment should have been rendered for appellant.

By article 3641, Rev. Stats., the authority is granted to pawnbrokers to sell the pledge upon the pledgor's failure to redeem the same within the time prescribed by the contract. In this case all the transactions leading up to the sale were shown to be under the provisions of, and in the manner required by, the statutes authorizing the sale of unredeemed pledges. It would seem to appear, therefore, that the property was sold with authority of, and in accordance with, the law; and on this question, in the absence of fraud or unfair dealing in the sale, would vest the title of the pledge in the purchaser, unless the subsequent act of the pawnbroker in neglecting or failing to file the report of the sale with the county clerk, within five days thereafter, as required by law, and his further failure to make entry of the disposition of the pledge in the proper registry book required of him to keep, renders the sale void.

Article 3645 gives rise to the alleged infirmity of the sale, and reads: "When a sale has been made the pawnbroker shall, within five days thereafter, file with the clerk of the County Court of the county where such sale was made, a report in writing and under oath showing (1) the time and place of such sale; (2) the notice given thereof; (3) a full description of the property sold, and by whom deposited; (4) by whom purchased, and the amount which each article was sold for; (5) the amount due the broker—principal, interest and expenses—upon each article sold; (6) the amount of surplus of the proceeds of sale of each article, if any, after deducting the amount due the broker of principal, interest and expenses."

The purpose of the statute is to give publicity to the sale in all its respects. The statute in terms does not prohibit the sale upon failure to comply with any requirement of law governing the business of pawnbrokerage. Article 414 of the Penal Code, read in connection with the statute, makes it evident that the Act was intended as a regulation of the business of pawnbrokerage, as an aid to police surveillance. The article of the Penal Code mentioned provides: "If any pawnbroker, or person doing any business as such, shall receive any article in pledge, or sell the same, without complying

with the laws regulating pawnbrokers in this State, he shall be punished by fine of not less than $25 nor more than $100."

Evidence of the failure to file with the clerk a copy of the advertisement of sale, or a report of the sale of the article pledged, is sufficient to make the case a violation of this law subjecting the offender to punishment. (Heilzleman v. State, 26 S. W., 729.) That the statute is designed to punish the seller for his acts of omission, and not prohibiting the sale, is further evident from art. 3650 of this Act, which affords a remedy against the pawnbroker's bond for the failure of the pawnbroker to comply with any requirement of the law. The article reads: "Any person injured by the failure of a pawnbroker to comply faithfully with his contract, or with any requirement of law governing the business of pawnbrokerage, may sue upon the bond of such pawnbroker and recover such damages as he can prove himself entitled to, not to exceed the penalty of such bond."

Where a sale is not prohibited by the statute upon failure to comply with any requirement of sale authorized, and the penalties of the law are aimed at some act or omission of the seller, the sale might be valid even though the seller has made himself liable to the penalty. (Niemeyer v. Wright, 40 Am. Rep., 720.) Nor is it required in order to accomplish the purpose of the statute, to hold the sale void upon failure to comply with collateral requirements subsequent to the sale.

There is a distinguishment between this case before us and the cases where there was fraud or imposition upon the public or individuals in the thing offered for sale, as called to our attention by the appellee. Here there was no fraud or imposition in the thing offered to be sold. The thing sold was a legal subject matter of sale in itself, and not fraudulent in itself; and the required proceedings leading up to the sale were legal.

The omission of appellant, after the sale, to make report of the sale, and to make the entry of the sale on his registry book required by law to be kept, might subject the seller to punishment, but would not render the sale void. The filing of the report of sale would have the same effect, as between the parties, as the filing of a deed for record. "To pass the mere legal title from one holder to another, it is not necessary that the conveyance should be recorded in an office of registration." (Portis v. Hill, 30 Texas, 562.)

The other contentions of the appellant involve the proper conduct and fairness of the sale in this case. The exercise of the power of sale is not solely for the benefit of the pledgee, but in executing such power he becomes the trustee of the pledgor. The pawnbroker has a special property in the thing pledged, as well as a trustee to sell. The property is pledged expressly to secure his claim. At the public sale required to be under the statute, he has an interest that the property in his possession and pledged for the debt should bring the amount of his claim, as this may be the only fund for the discharge of the debt. But as trustee, he is required to do more than to try only to pay his own debt merely. The sale over which he has the control as trustee must be conducted fairly and in good faith and in

such a way as to subserve not only the rights that he has, but also the highest interest of the pledgor. (22 Am. & Eng. Ency., p. 885; Jones on Mortgages, sec. 1906.) The pawnbroker, therefore, would be governed by the same restrictions of law as is placed upon the ordinary pledgee in the sale, clothed with power to sell.

The current of authorities is that a pledgee, or trustee, even though clothed with power of sale, is not permitted to become a purchaser of the property pledged at his own sale, without express consent of the pledgor. (22 Am. & Eng. Ency., p. 891; Perry on Trusts, sec. 195; Jones on Mortgages, sec. 1876; Jones on Pledges and Collateral Securities, sec. 635.)

The universal rule is that if the pledgee does become the unauthorized purchaser at his own sale such sale is valid unless set aside or repudiated by the pledgor, who must assert his rights within a reasonable time. (Jones on Pledges and Collateral Securities, sec. 637; Jones on Mortgages, sec. 1876.) In other words, the pledgor has the optional right to affirm or disaffirm the sale within a reasonable time, but the right of disaffirmance does not rest upon the arbitrary will of the pledgor. The rule of law in like subjects applied in this State is: If the trustee or agent to sell becomes a purchaser, directly or indirectly, at his own sale, the sale becomes prima facie voidable. (Connolly v. Hammond, 51 Texas, 635.) Circumstances which validate the sale will not be presumed. (67 Texas, 402.) The rule has the force of meaning that if the trustee becomes the unauthorized purchaser at his own sale the burden rests upon him to show that the sale was made according to law and under circumstances of the utmost fair dealing and good faith. The courts, in such investigation, will closely scrutinize the sale and the conduct of the sale; and in the absence of proof that the sale was made according to law, and conducted with the utmost fairness and good faith and in a way to subserve the highest and best interests of the pledgor, will set aside the sale. We think these rules applicable to pawnbrokers, and govern in this case.

The trial court made the finding, and concluded as a matter of law "that the sale was not properly and fairly made, for the reason that the pledgee purchased at his own sale for a price grossly inadequate and which it knew at the time to be less than half of the true market value of the property purchased." The evidence upon which the finding was made is that appellant's jeweler acted as auctioneer; and its general manager, who was a stockholder as well, conducted the sale for his corporation. The general manager bid in the property for $88, the amount of the loan. No other persons were bidders, or, as far as the record shows, were present. The general manager testifies that the earrings were worth $85 each, or a total of $170. The auctioneer, until the fall of the hammer, was the agent of the seller; and the general manager was here, not individually, but in his representative and managing capacity, and could not act inconsistently with the interests of his principal. To sell for his principal and buy for himself are inconsistent acts. At this "public auction" the general manager knowingly

bid one-half of the market value of the articles. It was said by Judge Campbell, in Heath v. Waters, 40 Mich., 466, "A trustee can not put himself at arms length and compel the beneficiary to protect herself. He is bound to protect her against his own imposition as well as against wrong from any other quarter, and the slightest unfairness would authorize her to complain." As said by Judge Wheeler, in Shannon v. Marmaduke, 14 Texas, 109, "Considering the price actually paid for the land, and its value, it is scarcely to be supposed that the defendant could have believed he was acting fairly and honestly towards the plaintiff to suffer the land to be sold off at a price so grossly inadequate; and the reconveyance to himself under the circumstances affords strong reason to conclude that the purchase was collusively made for his benefit. And if the determination of the question rested on this evidence alone we would hesitate much to disturb the verdict." Inadequacy of price merely ordinarily is not sufficient to set aside a sale, but that is not the doctrine intended to be applied. The inference of the want of good faith and utmost fair dealing arises where a pledgee buys in the property at his own sale at half price, of which he was at the time fully aware, because it would appear that he was knowingly dealing to his personal advantage in the wrong of the equity of redemption of the pledgor in the property. Bearing in mind the rule requiring of the pledgee the utmost good faith and fair dealing in the purchase, we are not prepared to hold that the testimony in this case is manifest that the purchase was made by the pledgee with that utmost fair dealing and good faith as to make the sale valid.

We think the court erred in finding and concluding that the contract of pawn in this case was usurious. There was no contract between the parties at the time to pay interest; and in the absence of the contract to pay interest the law implies interest to run from the maturity of the debt, at the legal rate. The amount of the loan in this case was $88. The judgment of the trial court is ordered reformed so as to allow the appellant six percent interest on $88 from November 16, 1903, to May 16, 1906, the day of the demand of the return of the property; and the judgment to be then, as credited, in all things affirmed for the balance of the value of the goods as found by the trial court, with costs of this appeal against the appellee.

*Reformed and affirmed.*