ANCHOR v. GOSE. (No. 11983.)

Court of Civil Appeals of Texas. Fort Worth. May 12, 1928.

1. **Appeal and error** ⬤⟹989—Only evidence tending to support allegations of plaintiff's petition is considered in determining propriety of giving peremptory instruction for defendant.

In determining propriety of court's action in giving peremptory instruction for defendant, Court of Civil Appeals can only consider evidence tending to support material allegations of plaintiff's petition, wholly disregarding that which is opposed to it or contradictory in its nature, and, if such evidence is of any probative force, giving of such peremptory instruction constitutes such error as requires reversal of judgment.

2. **Pledges** ⬤⟹33—Peremptory instruction for pledgee, in action by pledgor to recover rings sold by pledgee or their value, held error under evidence.

In action to recover two diamond rings or their value, which plaintiff had pledged to defendant to secure repayment of loan, and which defendant had sold for grossly inadequate sum after plaintiff had paid major portion of loan, peremptory instruction for defendant, held error under the evidence.

3. **Pledges** ⬤⟹56(8)—Inadequacy of price in sale of pledged property, coupled with slight circumstances of unfairness, authorizes setting aside sale.

While sale by pledgee of pledged property regularly and lawfully made will not be set aside for mere inadequacy of price, such inadequacy, coupled with even slight circumstances of unfairness or irregularity, will be sufficient to authorize setting aside of sale.

4. **Pledges** ⬤⟹56(4)—Provision authorizing pledgee to sell property after giving notice of sale held to imply that notice of sale to pledgor was necessary (Rev. St. 1925, art. 28).

Where note and pledge authorized pledgee to sell pledged property at a public or private sale "after giving notice of such sale," thus making notice of sale a condition precedent, in view of Rev. St. 1925, art. 28, it must be implied that notice of sale to pledgor was necessary, since, other than the public, no one else was interested.

Appeal from Wichita County Court; C. M. McFarland, Judge.

Action by Lila C. Anchor against S. M. Gose. Judgment for defendant, and plaintiff appeals. Reversed and remanded for new trial.

W. P. Smith, of Wichita Falls, for appellant.

J. S. Dickey and Taylor, Muse & Taylor, all of Wichita Falls, for appellee.

CONNER, C. J. This suit was instituted by Lila C. Anchor against S. M. Gose, to recover two diamond rings, or, in the alternative, for their value, which had been pledged and delivered to said Gose to secure the repayment of $100, which Gose had loaned to Miss Anchor on January 27, 1926. The note given by Miss Anchor for the repayment of the loan was made payable six months after its date, bore interest at the rate of 10 per cent. per annum, and was secured by "two diamond rings, lady's mounting, yellow gold," pledged and delivered to Mr. Gose at the time. The note also provided that, in default of payment, "the legal owners of the same" might "sell, assign, or deliver said security, either at public or private sale, after giving notice of such sale, and to apply the net proceeds of said sale to the payment of whatever may then be due."

The plaintiff alleged and the undisputed evidence shows that the note was credited with a payment of $50 on July 27, 1926, and a further payment of $25 in the following August; that, no further payments having been made, the defendant, Gose, delivered the diamonds to Judge Dickey, his attorney, and instructed him "to get my money out of them." Pursuant to such instruction, Judge Dickey prepared and posted in several public places notices of the sale, and also mailed a notice addressed to the plaintiff at Wichita Falls. Upon the appointed day, Judge Dickey "in the lobby of the Wichita State Bank" sold the diamond rings to a Mr. Jones for $35, there being no higher bidder. Jones was bidding for the defendant, Gose, having been appointed to so do. No money passed, but the note was credited with the $35 bid, and Jones immediately redelivered the diamond rings to Judge Dickey, who later sold them to a Mr. Mills for $35, who was not offered as a witness, and the money given to Mr. Gose.

At the conclusion of the testimony, the court peremptorily instructed the jury that had been impaneled to return a verdict for the defendant, which having been done, judgment for the defendant was entered, and the plaintiff has duly appealed and assigns error to the action of 'the court in giving the peremptory instruction.

[1] In determining the propriety of the court's action in giving the peremptory instruction brought to our attention, we can only consider the evidence tending to support the material allegations of the appellant's petition, wholly disregarding that which is opposed to it or contradictory in its nature. See Austin v. Cochran (Tex. Com. App.) 2 S. W.(2d) 831; First Nat. Bank v. Rush (Tex.

Com. App.) 210 S. W. 521; Hibbs v. Bank (Tex. Civ. App.) 293 S. W. 350; Magill v. McDonald (Tex. Civ. App.) 293 S. W. 349. And if such evidence, when so considered, is of any probative force, the giving of the peremptory instruction constitutes such error as requires a reversal of the judgment. See Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059.

[2] With these rules as guides, we have carefully reviewed and considered the evidence brought before us in a duly approved statement of facts, and have concluded that the court erred in giving the peremptory charge complained of, and that because of this the judgment must be reversed. To hold otherwise would, we think, deprive appellant of the right of a trial by jury, which is guaranteed to her by constitutional and statutory provisions.

In addition to the undisputed facts stated, the plaintiff testified, among other things, that the rings pledged were worth $300; that at the time she made the last payment of $25 she said to defendant, Gose, that she would "pay the rest as soon as" she could; that he "nodded his head in assent"; that about the middle of the following April she went in to pay the balance due upon the note, and then for the first time learned that the rings had been sold; that her post office address "was never at Wichita Falls"; that she lived in the country, and her address was "R. F. D. No. 3, Wichita Falls"; that she received no letter giving notice of the proposed sale, saw none of the posted notices, heard no one speak of it, or otherwise had any knowledge that her rings were to be sold; that, if she had received notice, she could and would have borrowed the money and made immediate payment of the balance due on her note; that at the time she borrowed the money Mr. Gose was very courteous, and among other things said, "If you cannot pay the amount of the note when due, I do not mind extending small loans," and she felt easy in her mind about the note.

[3] Assuming the testimony in behalf of appellant as true for the purposes of our conclusions, as it is our duty to do, it is evident that the rings were sold for a grossly inadequate sum, and while a sale regularly and lawfully made will not be set aside for mere inadequacy of price, it is very generally held that such inadequacy, coupled with even slight circumstances of unfairness or irregularity, will be sufficient to authorize the setting aside of the sale. See Gandy v. Cameron State Bank (Tex. Civ. App.) 2 S.W.(2d) 971.

Appellee's relation to appellant and her property was analogous to that of a trustee. In treating the subject, the Court of Civil Appeals, in the case of Uncle Sam's Loan Office v. Emery, 49 Tex. Civ. App. 236, 107 S. W. 1155, had this to say:

"The exercise of the power of sale is not solely for the benefit of the pledgor, but in execut-

ing such power he becomes the trustee of the pledgor. The pawnbroker has a special property in the thing pledged, as well as a trustee to sell. The property is pledged expressly to secure his claim. At the public sale required to be under the statute, he has an interest that the property in his possession and pledged for the debt should bring the amount of his claim, as this may be the only fund for the discharge of the debt. But as trustee he is required to do more than to try only to pay his own debt merely. The sale over which he has the control as trustee must be conducted fairly and in good faith, and in such a way as to subserve, not only the rights that he has, but also the highest interest of the pledgor. * * * The pawnbroker, therefore, would be governed by the same restrictions of law as is placed upon the ordinary pledgee in the sale clothed with power to sell."

The evidence fails to disclose that appellee manifested any anxiety to have a sale of the rings so advertised, conducted, or attended by bidders as would ordinarily tend to cause the rings to bring a price above the small balance due on the note, and thus produce a surplus for the benefit of appellant. As perhaps illustrating this, he testified:

That he had not seen the rings since he delivered them to Judge Dickey, together with the note, and that "I instructed Judge Dickey to sell them; I asked Lester Jones to represent me at the sale; I was out of the city; I told him to bid on the rings the amount I had up against them. * * * Lester Jones bought them in for me. * * * I told Judge Dickey to get my money out of them, to get $34 or $36 for them. I think he did that day or the next. I think he gave me the money. * * * I do not want to see the rings. I wanted to get it out of my system. * * * Just a few days before the suit was brought, you came into my office with some money and said you wanted to pay it. I did not accept the money; it made no difference then whether it was $50 or $150. As to whether I told you at that time I would not return the rings, I said to see my attorney. As to whether I gave as my reasons why I would not return the rings, 'that she had talked about my son and his wife,' no, sir; I had nothing to do about the rings. As to what caused me to make that statement, I could have made a stronger one without going into details. * * * As to whether I made the statement that I didn't know where the rings were, and if I had them she couldn't get them, because she had talked about my son and his wife, I will say that, if I had made that statement, they were legally sold, and she could not get them. I do not remember the details at all at this time. No, sir, I was not mad at her, and am not mad at her now. As to whether I gave Judge Dickey any instructions whatever about how to conduct the sale, I just turned the note over to him. I supposed, as an attorney, he would know how to pull off a sale. As to whether all I did was just give him the note and tell him to get my money, just the note. No, sir; if she were to pay me the amount of money due on that note and interest, and attorney's fee and cost, I would not make an effort now to get those rings for her; the rings were sold."

In the case of Loan Office v. Emery, supra, the court used the following language:

"The rule has the force of meaning that, if the trustee becomes the unauthorized purchaser at his own sale, the burden rests upon him to show that the sale was made according to law, and under circumstances of the utmost fair dealing and good faith. The courts, in such investigation, will closely scrutinize the sale and the conduct of the sale; and in the absence of proof that the sale was made according to law, and conducted with the utmost fairness and good faith, and in a way to subserve the highest and best interest of the pledgor, will set aside the sale."

The court again said in the above case that:

"The inference of the want of good faith and utmost fair dealing arises where a pledgee buys in the property at his own sale at half price, of which he was at the time fully aware, because it would appear that he was knowingly dealing to his personal advantage in the wrong of the equity of redemption of the pledgor in the property. Bearing in mind the rule requiring of the pledgee the utmost good faith and fair dealing in the purchase, we are not prepared to hold that the testimony in this case is manifest that the purchase was made by the pledgee with that utmost fair dealing and good faith to make the sale valid."

[4] It is to be further noted that the only authority appellee had to sell, otherwise than by a foreclosure and judicial sale, is that found in the note and pledge. The language relating to that subject is as follows:

" * * * To sell, assign, or deliver said security, either at public or private sale, *after giving notice of such sale.*" (Italics ours.)

It is thus indicated that notice of a sale is a condition precedent, for it is *after* the giving of notice that a sale, by the terms of the pledge, is authorized. It must be implied that notice of sale to the appellant was necessary. Other than the public, no one else was interested. It was of interest to the appellant that notice should be given to her, in order to enable her to exercise the right of redemption, and, if she did not choose to do this, notice to the public was intended to bring about, as far as might be, an interest in the same and the production of a fair price. While evidence in behalf of appellee was to the effect that Wichita Falls was the last known residence of appellant, it was not so indorsed on the note or pledge, and she gave her address as hereinabove stated, and denied that she had at any time given her address as Wichita Falls. On cross-examination she testified:

"I tell the jury my address was R. F. D. No. 3, Wichita Falls. It was that when I secured the loan, and when it came due, and when the notices were given, and it is that now; I have not changed it. R. F. D. No. 3, Wichita Falls, is my address. As to whether I never told him that R. F. D. No. 3 was my address, I will state

8 S.W. (2d)

I never thought of my address. I suppose, if I had made out the paper, I would have written out my address. The paper was brought to me, and I signed it; I never even read it. I told him my address was R. F. D. No. 3, Wichita Falls."

Moreover, in title 1 of our Revised Statutes, relating to general provisions, a number of definitions are given, and article 28 of the title reads, so far as pertinent, as follows:

"Whenever by law notice is required to be given of any act or proceeding, whether public or private, or relating to a judicial, executive or legislative matter, which notice is now authorized by law or by contract to be made by posting notices in one or more public places, such notices shall be given by publication thereof in a newspaper of general circulation which has been continuously and regularly published for a period of not less than one year, in the county in which said act or proceeding is to occur. Nothing in this article shall be construed to require the publication of any general election notice, public road notice or probate notice when the appraised value of the estate in which same is issued is less than one thousand dollars, nor shall this article apply to sales made under a written contract wherein it is provided that notice of sale thereunder may be posted. All notices published hereunder shall be printed at least once each week for the period of time now required for posting such notices. If no paper should be published in the county where such notice is required to be given, then such notice may be posted as now provided by law."

On the trial below, appellant requested the submission of a number of special issues, and error is assigned to the failure of the court to give them; but we think it unnecessary to discuss the issues thus presented, for we cannot know what will be the state of the evidence when, if at all, the case is again tried. We think it sufficient to say that upon another trial, if any, it will be the duty of the court to submit to the jury, if one be impaneled, issues in proper form, together with such explanatory charges, if any, as may be required upon all material issues pleaded by the parties, and in support of which evidence is offered tending to support them.

We conclude that the judgment below must be reversed, and the cause remanded for another trial, not in conflict with this opinion.