FILED

October 9, 2014

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 1:33 PM



## COURT OF WORKERS' COMPENSATION CLAIMS
## DIVISION OF WORKERS' COMPENSATION

EMPLOYEE: Robert Poindexter

EMPLOYER: Estes Express Lines

DOCKET #: 2014-08-0012
STATE FILE #: 67112/2014
DATE OF INJURY: August 20, 2014

INSURANCE CARRIER/TPA: New Hampshire Insurance Co./Gallagher Bassett

### EXPEDITED HEARING ORDER

THIS CAUSE came before the undersigned Workers' Compensation Judge upon the Request for Expedited Hearing filed by Robert Poindexter (Employee).

On September 23, 2014, a Request for Expedited Hearing was filed with the Tennessee Court of Workers' Compensation Claims, Division of Workers' Compensation, on behalf of Employee pursuant to Tennessee Code Annotated section 50-6-239 to determine if the provision of medical benefits and/or temporary disability benefits is appropriate. Employee requested an evidentiary hearing.

The Court conducted a telephonic hearing on October 8, 2014. Employee appeared *pro se*. Estes Express Lines and New Hampshire Insurance Co. (Employer/Carrier) were represented by attorney Eugene Forrester. Considering the positions of the parties, the applicable law and all of the evidence submitted, the Court hereby finds that Employee is not entitled to medical benefits or temporary disability benefits.

### ANALYSIS

#### Issues

1. *Whether Employee sustained an injury that arose primarily out of and in the course and scope of employment with Employer.*

2. *Whether Employer is obligated to provide medical benefits and/or temporary disability benefits.*

1

## Evidence Submitted

The Court received and considered the following documentation and information submitted by the parties, which was admitted into evidence without objection (Note: Ex. 13 marked for identification only):

Exhibit No./Evidence

1. Request for Expedited Hearing, filed September 23, 2014
2. Dispute Certification Notice, dated September 22, 2014
3. Petition for Benefit Determination, filed September 9, 2014
4. Denial letter from adjuster (Gina Ball), dated September 3, 2014
5. Notice of Denial of Claim (Form C-23) dated September 3, 2014
6. Work Status/Restrictions Forms from Nova Medical Centers (Kallol Saha, M.D.) dated August 20, 21, 27 and September 5, 12, 2014
7. Panel of physicians, Gregory Wolf, M.D., at Tabor Orthopedics selected on August 26, 2014
8. Medical records, Dr. Wolf, dated August 26, 2014
9. Medical records, Dr. Saha, initial evaluation dated August 20, 2014
10. Medical records, Dr. Saha, follow-up evaluation dated August 21, 2014
11. Wage records of Employee showing Average Weekly Wage of $1,550.68 and email from adjuster dated September 10, 2014, stating that Employee is at the maximum TTD comp rate of $932.00.
12. Email from Employee to adjuster dated September 19, 2014, with explanation of circumstances of alleged injury
13. Email from adjuster dated September 19, 2014, explaining Employer/Carrier's reasons for denial of claim.

## History of Claim

Employee works as a long haul truck driver for Employer (Ex. 3). He reported that on August 20, 2014, while working in the State of Illinois, he sustained a hip and back injury (Ex. 3). His description of the injury was "I was stepping down out of my work vehicle when a heavy pain occurred down in my back and hip area that traveled down into my leg" (Ex. 3). Employee testified that regulations applicable to his truck driving job require him to stop for meals, and that his injury occurred when he stopped for a lunch break.

Regarding his injury, Employee testified as follows:

What happened with the injury was I was fine when I left Memphis [TN], I was fine when I reached Elgin [IL], it was not until I went on my lunch break … and I stepped down out of my truck and I started hurting and I didn't know what it was and … as I was walking it got worse. When I got back to the truck … the pain was unbearable, and I suffered until I got back to Memphis because I did not know what the injury

2

was. The only thing I know is that I was hurting real bad. Once I got back to the terminal they had to help me out of the truck because I couldn't move because of my injury.

Employee further testified that he immediately went to a company doctor, Kallo Soha, M.D. at Nova Medical Center, as directed by his Employer. According to the "Initial Evaluation" at Nova Medical Center on August 20, 2014, "patient states he was getting out of truck and felt pain in lower back and [it] radiates to left hip." It was further reported "patient states he started feeling pain this early morning but severe pain occurred [when] he was getting out of his truck." The diagnosis was listed as "(1) bilateral sprain of lumbar [spine], and (2) left enthesopathy of hip." [Note: Enthesopathy is an inflammatory condition, not typically associated with traumatic injuries.] Physical therapy and medication was recommended. It was also recommended that Employee consult with an orthopedist for his left hip pain (Ex. 9). Employee returned to Nova Medical Center on August 21, 2014, complaining that he got no relief from medication. He was prescribed stronger pain medication and again advised to see an orthopedist (Ex. 10).

The adjuster for Employer/Carrier provided a panel of orthopedists to Employee, and on August 26, 2014, Employee selected Gregory Wolf, M.D., at Tabor Orthopedics. On that same date, Employee saw Dr. Wolf and complained of left hip pain. X-rays of the left hip showed "some heterotopic bone in the anterior aspect of his hip consistent with an old proximal quadriceps tendon avulsion. This is a remote injury and is not acute." Dr. Wolf's impression was "probable lumbar radiculopathy." Employee was instructed to return to sedentary work and return in one week to assess his progress (Ex. 8).

On September 3, 2014, the adjuster for Employer/Carrier filed a "Notice of Denial" (Ex. 5) stating the basis for denial:

> Employee admits he was logged out, voluntarily elected to stop at truck stop for break. No injury by accident noted. Employee denies any defect with truck, steps and/or slippery liquids. Employee stepped and had pain, no injury by accident. Dr. Wolf has opined hip is not an acute injury.

Employee testified that he continued treatment at Nova Medical Center after seeing Dr. Wolf. He furnished Work Status/Restriction Forms (Ex. 6) which showed that Employee was advised he could work with restrictions from August 20, 2014, to September 12, 2014. No evidence was provided by the parties regarding whether restricted duty work was available.

At the telephone hearing, Employee offered no proof of the medical benefits he was requesting. He did testify that he would like to be reimbursed for his lost wages. Employee testified that he was unable to work from the date of injury (August 20, 2014), until released to return to work by Nova Medical Center, which he said was on September 23, 2014. The parties stipulated that Employee's average weekly wage was $1,550.68 and that he was at the maximum weekly compensation rate of $932.00.

3

**Employee's Contentions**

Employee contends that he sustained an injury that arose primarily out of and in the course and scope of employment with Employer when he stepped out of his truck on August 20, 2014. Employee contends that Employer/Carrier should provide temporary disability benefits and medical benefits.

**Employer's Contentions**

Employer/Carrier disputes the compensability of Employee's injury on the basis that the injury did not arise primarily out of and in the course and scope of employment with Employer. Employer contends that Employee was on a lunch break when his alleged injury occurred, which was not in the course and scope of employment. Employer also contends that Employee has failed to describe any work accident which caused an injury. Further, Employer argues that Dr. Wolf noted in his report that Employee's hip condition was not the result of an acute injury.

**Findings of Fact and Conclusions of Law**

*Standard Applied*

When determining whether to award benefits, the Judge must decide whether the moving party is likely to succeed on the merits at trial given the information available. *See generally, McCall v. Nat'l Health Care Corp.*, 100 S.W. 3d 209, 214 (Tenn. 2003) and Tenn. Code Ann. sec. 50-6-238 (2012). The employee bears the "burden of proving each and every element of the claim by a preponderance of the evidence." Tenn. Code Ann. § 50-6-239(c)(6) (2014).

*Factual Findings*

Considering all admissible evidence, including the testimony of Employee, the Court finds that on August 20, 2014, Employee was driving a truck in Illinois as an employee of Employer. Employee testified that he was feeling fine until he stopped for a lunch break, and as he stepped down out of his truck he started hurting but "did not know what it was." No specific accident was described by Employee. When Employee returned to Memphis, he was directed by his Employer to go to Nova Medical Center. Employee went directly to Nova Medical Center on the same day as the alleged injury, and reported a slightly different version of how his injury occurred. At Nova, Employee reported that he had started feeling his pain earlier but that it became severe when he was getting out of his truck. The diagnosis at Nova was bilateral sprain of lumbar [spine], and (2) left enthesopathy of hip. Employee was given a panel of physicians and selected Dr. Wolf. Dr. Wolf diagnosed lumbar radiculopathy, and opined that Employee's hip condition was not the result of an acute injury. No physician has opined that Employee's alleged injury arose primarily out of and in the course and scope of employment with Employer.

4

1.     *Employee failed to prove that he sustained an injury that arose primarily out of and in the course and scope of employment with Employer.*

To be compensable under the workers' compensation statutes, an injury must arise primarily out of and occur in the course and scope of the employment. Tenn. Code Ann. § 50-6-102(13) (2014). An injury means "an injury by accident . . . arising primarily out of and in the course and scope of employment, that causes death, disablement or the need for medical treatment of the employee." *Id.* For an injury to be accidental, it must be "caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence, and shall not include the aggravation of a preexisting disease, condition or ailment unless it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(13)(A) (2014).

An injury is deemed to arise primarily out of and in the course and scope of employment "only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." Tenn. Code Ann. § 50-6-102(13)(B) (2014). Further, "[a]n injury causes death, disablement or the need for medical treatment only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(13)(C) (2014). An injury is shown to a reasonable degree of medical certainty if "in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(13)(D) (2014). "The opinion of the treating physician, selected by the employee from the employer's designated panel of physicians . . . shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence." Tenn. Code Ann. § 50-6-102(13)(E) (2014). The employee bears the "burden of proving each and every element of the claim by a preponderance of the evidence." Tenn. Code Ann. § 50-6-239(c)(6) (2014).

Traditionally, courts have held that the statutory requirements that an injury arise out of and in the course of the employment are not synonymous "although both elements exist to ensure a work connection to the injury for which the employee seeks benefits." *Blankenship v. Am. Ordnance Sys.*, 164 S.W.3d 350, 354 (Tenn. 2005). An injury occurs in the course of employment if it takes place while the employee was performing a duty he or she was employed to perform. *Fink v. Caudle*, 856 S.W.2d 952, 958 (Tenn. Workers' Comp. Panel 1993). Thus, the course of employment requirement focuses on the time, place, and circumstances of the injury. *Saylor v. Lakeway Trucking, Inc.*, 181 S.W.3d 314, 318 (Tenn. 2005).

In contrast, arising out of employment refers to causation. *Reeser v. Yellow Freight Sys., Inc.*, 938 S.W.2d 690, 692 (Tenn. 1997). An injury arises out of employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. *Fritts v. Safety Nat'l Cas. Corp.*, 163 S.W.3d 673, 678 (Tenn. 2005). Put another way, the element of causation is satisfied when the "injury has a rational, causal connection to the

5

work." *Braden v. Sears, Roebuck & Co.,* 833 S.W.2d 496, 498 (Tenn. 1992). The mere presence of the employee at the place of injury because of the employment is not enough, as the injury must result from a hazard peculiar to the work or be caused by a risk inherent in the nature of the work. *Blankenship,* 164 S.W.3d at 354. Accordingly, "an injury purely coincidental, or contemporaneous, or collateral, with the employment . . . will not cause the injury . . . to be considered as arising out of the employment." *Jackson v. Clark & Fay, Inc.,* 270 S.W.2d 389, 390 (Tenn. 1954).

Applying these principles to this case, it is the finding of the Court that Employee's back and hip pain did occur in the course and scope of his employment. According to the evidence submitted and the testimony of Employee, Employee's complaints of pain began while he was on a truck driving trip on behalf of his Employer. It is not significant that Employee was stopped for a lunch break, as this was a requirement of the truck driving job. However, Employee has failed to sustain the burden of proving that he sustained an injury by accident which arose primarily out of and in the course and scope of employment. Employee's testimony was vague in describing how his alleged injury occurred. He testified that he "stepped down out of my truck and I started hurting and I didn't know what it was." He further testified that he was fine until he stopped for the lunch break and got out of his truck, but he reported a different history to Nova Medical Center that he started hurting earlier and became worse when he got out of his truck. Dr. Wolf reported that Employee's hip condition was not the result of an acute injury. No medical doctor has reported that Employee's alleged injuries arose primarily out of his employment. Employee has submitted insufficient evidence to show that his alleged injuries arose primarily out of employment. Therefore, it is the ruling of the Court that Employee has failed to establish that he sustained a compensable work-related injury.

> 2. *Employer is not obligated to provide temporary disability benefits or medical benefits.*

Employee has failed to prove that he sustained a compensable work-related injury. Therefore, Employer/Carrier is not responsible for providing medical or temporary disability benefits.

**IT IS, THEREFORE, ORDERED THAT** Employee's interlocutory request in this Expedited Hearing for temporary disability benefits and medical benefits is denied at this time on the grounds that Employee has failed to prove that he sustained an injury by accident arising primarily out of and in the course and scope of employment.

**ENTERED this the 9th day of October, 2014.**

**Jim Umsted, Judge**
**Court of Workers' Compensation Claims**

6

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Request for Appeal, you must:

1. Complete the enclosed form entitled: "Request for Appeal".

2. File the completed form with the Court Clerk *within seven (7) business days* of the date the Expedited Hearing Order was entered by the Workers' Compensation Judge.

3. Serve a copy of the Request for Appeal upon the opposing party.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 9th day of October, 2014.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|------|---------------|------------------|---------|------------|-----------|---------------|
| Robert Poindexter, Employee | x | | | | x | poindextercharters@gmail.com |
| Eugene Forrester, Employer's attorney | | | | | x | esf@farris-law.com |

Jim Umsted, Judge
Court of Workers' Compensation Claims